ORTEGA, P. J.
*214 Defendant appeals a judgment of conviction for five counts of first-degree sexual abuse, ORS 163.427 ; seven counts of first-degree sodomy, ORS 163.405 ; one count of first-degree unlawful sexual penetration, ORS 163.411 ; and one count of first degree rape, ORS 163.375. In his first assignment of error, he challenges his conviction for first-degree rape, arguing that the trial court erred by not dismissing that count as time-barred. In his second and third assignments of error, he challenges his convictions on three counts of first-degree sexual abuse, *427 asserting that the trial court plainly erred by not sua sponte acquitting him of those counts and by instead entering convictions on them. We reject defendant's second and third assignments without written discussion, and write to address the statute of limitations issue presented in his first assignment.[1] Ultimately, we conclude that information that was transmitted to the Department of Human Services (DHS) and a local police department 13 years before defendant was indicted was insufficient to trigger the statute of limitations for first-degree rape. Accordingly, we affirm.
Defendant's first assignment of error raises the issue of whether the statute of limitations in ORS 131.125(2) (2013), amended by Or. Laws 2015, ch. 417, § 1; Or. Laws 2016, ch. 120, § 1[2] was triggered when the eight-year-old victim told a playmate, C, in 2000 that defendant "rapes" her or "was raping" her, and C's foster mother reported that information to DHS and local police. ORS 131.125(2)(a) provides that a prosecution for first-degree rape
"may be commenced within six years after the commission of the crime or, if the victim at the time of the crime was under 18 years of age, anytime before the victim attains 30 *215 years of age or within 12 years after the offense is reported to a law enforcement agency or the Department of Human Services, whichever occurs first[.]"
Defendant claims that, for the purposes of ORS 131.125(2), the events that occurred in 2000 constitute a "report" of first-degree rape to DHS and the local police, which triggered the running of the statute of limitations. He further argues that, because the report occurred more than 12 years before he was indicted for first-degree rape, the trial court erred by not dismissing that count as time barred.
For purposes of defendant's motion to dismiss the first-degree rape count, the parties stipulated to the following facts. Defendant began dating the victim's mother in 1996, and at times he lived in the victim's home. In October 2000, the foster mother of C called DHS to report that the victim had told C that defendant "rapes her." C had explained to her foster mother that defendant had invited C and the victim into the victim's house to play, but the victim told her that she did not want to go into the house without her older brother because defendant "rapes her." Neither C nor her foster mother asked the victim what she meant by that statement. After receiving the call, DHS contacted the local police department. The next day, a DHS caseworker and a police officer contacted the victim, who was then eight years old, at her school. When asked about defendant, the victim said that defendant "has never done anything to her that she did not like" and denied telling anyone that he had touched her in an inappropriate way. When the DHS caseworker told the victim that someone had contacted DHS and stated that they had heard her say that she was being inappropriately touched by defendant, the victim responded that she had never said anything like that to anyone and did not know why someone would report that. The DHS caseworker met with the victim's mother and told her about the allegations. The victim's mother was "shocked," but expressed that she had no knowledge of any wrongdoing by defendant. Because the victim denied the abuse, the DHS caseworker closed the case as "unfounded."
Thirteen years later, the victim disclosed to her father that defendant had sexually abused her over a period of at least four years. In December 2013, defendant was *216 indicted for numerous sex offenses. As relevant to this appeal, the indictment alleged that defendant committed first-degree rape against the victim "on or between January 1, 1996 and December 31, 2000," when *428 the victim was between three and eight years old. Before trial, defendant moved to dismiss the first-degree rape count, asserting his statute of limitations argument. The trial court denied the motion. The jury found defendant guilty of 14 counts, including the first-degree rape count at issue on appeal.[3]
On appeal, defendant renews his argument that the victim's statement to her playmate, which was related to DHS and the police, was a "report" for purposes of ORS 131.125(2) sufficient to trigger the statute of limitations. In defendant's view, the report "communicated facts that form the basis for a particular offense: rape." Defendant further asserts that the statute of limitations was triggered even though the victim herself denied any sexual activity by defendant when questioned by DHS and the police because it was enough that the report was specific to a particular act and time.
The state counters that the information that DHS and the police received was not sufficient to meet the standard for triggering the statute of limitations. The state contends that the information conveyed to DHS and the police was not a "report" because it did not give specific allegations of fact that informed DHS or the police about the particular offense that defendant had committed. The state explains that simply using the word "rape," particularly when used by an eight-year-old child, failed to communicate a particular or specific instance of criminal conduct; rather, it described a general pattern of abuse. The state also argues that a statement by the victim to C, "even when repeated by C's foster mother to DHS," did not constitute a formal report of sexual abuse because it was not intended to trigger an investigation into defendant's conduct.
We begin with several cases that have addressed ORS 131.125(2). In State v. Hutchison , 176 Or.App. 363, 365, 31 P.3d 1123 (2001), we examined whether the statute of *217 limitations had been triggered as to numerous counts of rape, sodomy, and first-degree sexual abuse when a victim reported that the defendant had touched her breast, but denied any other type of sexual contact. The defendant essentially argued that the statute imposed a duty on the state to investigate all possible offenses related to the offense that was actually reported. Id. at 367, 31 P.3d 1123. The state conceded that criminal allegations related to the defendant touching the victim on the breast were barred, but asserted that disclosing one instance of conduct constituting sexual abuse did not constitute "a report of any and all types of sexual abuse that may have occurred before the date of disclosure." Id. at 366, 31 P.3d 1123.
To decide the issue, we interpreted ORS 131.125(2). We concluded that the statutory text "plainly requires actual communication of the facts that form the basis for the particular offense reported." Id. at 368, 31 P.3d 1123. We also noted that the statute contains no text "suggesting that the state is on inquiry notice as to facts not reported." Id . Ultimately, we decided that the statute had begun to run as to the offenses involving the defendant's touching of the victim's breast when she reported that specific conduct to the police. However, her reporting of that specific conduct did not trigger the statute of limitations as to all other sex offenses that may have been committed up to that date. Id . In sum, we concluded that "the statute of limitations begins to run as to each separate offense only when the facts of each separate offense have been reported." Id. at 369, 31 P.3d 1123.
A few years later, we concluded that the report of a "sexual relationship" between a defendant and a victim triggered the statute of limitations for the crime of third-degree sexual abuse. State v. Sauls , 197 Or.App. 545, 552, 106 P.3d 659 (2005). In that case, we noted that, given the context of the report, the "sexual relationship" reported by the defendant's ex-husband necessarily included the specific sexual contact that was eventually charged as third-degree sexual abuse. The defendant's ex-husband had informed DHS that the defendant "has been in a sexual relationship with [the 17-year-old victim] for the past two years, and is now 6 months pregnant by him." Id. at 548, 106 P.3d 659 (internal quotation marks omitted). Some *429 years later, *218 the state charged the defendant with third-degree sexual abuse, alleging that she had subjected the victim to sexual contact by touching his penis and that the victim was incapable of consent by reason of being under 18 years of age. See ORS 163.415(1) (defining third-degree sexual abuse). We noted that, under Hutchison , in order to trigger the statute of limitations,
"the facts that needed to be communicated in order to constitute a report of sexual abuse in the third degree as alleged in Count I in the present case would be that defendant had 'sexual contact' with [the victim] that involved touching his penis and that [the victim] was under 18 years of age at the time that the contact occurred."
Sauls , 197 Or.App. at 551, 106 P.3d 659.
We concluded that the report by the defendant's ex-husband was sufficient to trigger the statute of limitations because, although in some contexts the report of a "sexual relationship" might be "somewhat ambiguous," it was "not ambiguous in this context." Id. at 552, 106 P.3d 659. That is, because the ex-husband had reported that the "sexual relationship" had resulted in the defendant becoming pregnant by the victim, "it is clear that the reporter understood 'sexual relationship' to involve contact between defendant and the victim's penis." Id . In that circumstance, the ex-husband had reported specific facts that constituted third-degree sexual abuse; thus, the statute of limitations had begun to run at the time of the report. Id .
Later that same year, in State v. Harberts , 198 Or.App. 546, 559, 108 P.3d 1201 (2005), rev. den. , 341 Or. 80, 136 P.3d 1123 (2006), we concluded that a referral of the victim for a sexual abuse evaluation did not constitute a "report" within the meaning of ORS 131.125(2). In Harberts , the victim had been referred for an evaluation when she was 10 years old based on concerns of sexual abuse. During that evaluation, she denied that the defendant had sexually abused her. However, 11 years later she reported that the defendant had sexually abused her prior to that evaluation. We concluded that, because the victim "reported no facts to a law enforcement or other governmental agency * * * other than that she *219 was not sexually abused," there was no report that triggered the statute of limitations. Id. at 559-60, 108 P.3d 1201.
Finally, we most recently addressed ORS 131.125(2) in State v. McCrorey , 223 Or. App. 655, 196 P.3d 106 (2008), rev. den. , 346 Or. 66, 204 P.3d 96 (2009). There, the defendant was convicted of aiding and abetting her husband in the commission of 17 sex offenses against the defendant's then-teenage daughter between 1995 and 1999. Id. at 657, 196 P.3d 106. She argued that nine of her convictions were barred by ORS 131.125(2) because the state had received notice of her role in the abuse of her daughter several years before the crimes were prosecuted. The initial "reports" included information relayed to DHS that the defendant's husband had been sharing a bedroom with the victim; that the defendant's husband and the victim had been "kissing, hand-holding, and cuddling"; that the defendant's husband had condoms in his bedroom; and that the victim "was afraid that she had become pregnant." Id . at 657-58, 196 P.3d 106. When DHS interviewed the victim, she denied any sexual abuse. Shortly thereafter, DHS received information from the defendant's husband's nephew that he had entered into some sort of "sexual contract" with the defendant, the defendant's husband, and the victim, and that he had been involved in some "threesomes and foursomes" with the victim. Id . at 658, 196 P.3d 106. That same month, at a family therapy session with a DHS caseworker, the victim's sister reported that the defendant's husband had been having "sex" with the victim. The victim "strongly denie[d]" that allegation. Id . Similarly, when a police officer followed up with the victim, she denied any sexual contact with the defendant's husband. Accordingly, the police recommended that the case be closed as unfounded. Id .
Several years later, the victim reported to the police that the defendant's husband had sexually abused her and that the defendant was complicit in that abuse. Accordingly, the defendant was charged with, and convicted of, aiding and abetting her husband's sexual abuse of the victim. On appeal, we concluded that none of the earlier "reports" had triggered the statute of limitations because they *430 did not transmit any specific facts that formed the basis for the charges of first-degree sexual abuse, oral sodomy, or rape. *220 Id . at 663, 196 P.3d 106. We noted that the "reports" were "too vague and ambiguous" because the specific conduct reported included conduct, such as "kissing" and "cuddling" that did not constitute rape, and the report of "sex" was based on mere suspicions. Id . We also noted that the victim had denied any sexual contact or conduct when questioned by police. Id . at 664, 196 P.3d 106. Accordingly, we concluded that "the police report seems to us especially close to the report that we found insufficient to trigger the statute of limitations in [ Harberts ], in which the police received a very general report * * * about suspicions of possible sexual contact, which the victim denied until many years later." Id .
Those cases provide some guiding principles. First, Hutchison made clear that, to constitute a "report" under ORS 131.125(2), the information must include specific facts that form the basis for the eventual charge. 176 Or.App. at 368, 31 P.3d 1123. In contrast, a report that is "too vague" or "ambiguous" as to the specific conduct or the timeframe in which that conduct occurred is not sufficient to trigger the statute of limitations. See McCrorey , 223 Or.App. at 663-64, 196 P.3d 106 ; Hall v. Lampert , 196 Or.App. 285, 291, 100 P.3d 1138 (2004), rev. den. , 338 Or. 301, 109 P.3d 375 (2005) (concluding that a report of sexual contact was insufficient to trigger the statute of limitations because "the instances of sexual contact [reported] fell outside the time period encompassed by the charges").
Second, the context of the "report" can matter. For example, we recognized in Sauls that a report asserting an ongoing "sexual relationship" could be ambiguous depending on the context in which it was made. 197 Or.App. at 552, 106 P.3d 659. We ultimately concluded that it was not ambiguous when considered in context with other specific facts that were reported and depending on how the reporter understood the conduct that he was reporting. Id .
With those principles in mind, here, we conclude that, when considered in context, the statement of the eight-year-old victim to C that defendant "rapes" her was insufficient to trigger the statute of limitations. To briefly recap, the victim reportedly told another child that defendant "rapes" her, and that statement was then reported to DHS and the police by an adult who had no additional *221 information. Further, when confronted with the report, the victim denied saying that defendant "rapes" her and denied any misconduct by defendant. In that circumstance, a third-hand report of the use of the word "rapes" by the victim, without any additional explanation or specific factual disclosures, was too vague and ambiguous to trigger the statute of limitations, because such a comment did not actually communicate the facts that form the basis for the particular offense reported. That is, no specific facts were transmitted other than the victim's use of the word "rapes" and, in this case, that was simply not enough to trigger the statute of limitations. We acknowledge that, in other circumstances, a victim's statement that someone has "raped" her, without more, could be enough to satisfy ORS 131.125(2), but this is not such a case. For those reasons, we conclude that this case is like McCrorey , in that the statute of limitations was not triggered by a general report of possible sexual contact that was denied by the alleged victim at the time of the report.
Affirmed.

We also reject without written discussion the assignments of error in defendant's supplemental pro se brief.

ORS 131.125(2) has been amended several times between the time that defendant committed the crimes and his indictment for those crimes. Nevertheless, none of the amendments affect the issue presented on appeal. Accordingly, all references to ORS 131.125(2) in this opinion are to the 2013 version of the statute.
We note, however, that the legislature amended the statute in 2015 and removed the provision that is at issue on appeal-at least as to the crime of first-degree rape. Or. Laws 2015, ch. 417, § 1.

The trial court dismissed a count of attempted first-degree sodomy.